IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HOUSING NORTHWEST INCORPORATED,<br><br>        Plaintiff,<br><br>        v.<br><br>AMERICAN INSURANCE COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>        Defendants. | Case No. 3:19-cv-00253-SB<br><br>**OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Housing Northwest Incorporated ("HNI") filed this action against Travelers Property Casualty Company of America ("Travelers") and American Insurance Company ("American") (together, "Defendants") alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 3.) Defendants now move for summary judgment (ECF Nos. 15 and 17), and HNI moves to certify a question to the Oregon Supreme Court. (ECF No. 25.) For the reasons explained below, the Court denies Defendants' motions for summary judgment and denies HNI's motion for certification.

# BACKGROUND[1]

HNI is a non-profit company that provides college housing in Portland. (Decl. of Steven Davies ("Davies Decl.") ¶ 3, ECF No. 21.) HNI owns and operates housing property located on SW Clay Street in Portland (hereinafter "Goose Hollow property"). (Davies Decl. ¶ 3.) Travelers issued six year-long policies to HNI from July 1, 2012 to July 1, 2018. (Decl. of Ronald J. Clark ("Clark Decl.") ¶ 6, ECF No. 16.) American issued HNI a policy with coverage from July 1, 2011 to July 1, 2012. (Decl. of Darren C. Beatty ("Beatty Decl."), Ex. A, ECF No. 19.)

In 2017, HNI retained the services of BEAR Consulting Services, LLC ("BEAR"), to perform a building envelope assessment of the Goose Hollow property. (Davies Decl. ¶ 4.) In a report dated June 13, 2017, BEAR detailed its preliminary findings that the Goose Hollow property may be sustaining hidden property damage from water intrusion. (Decl. of Lee Dunham ("Dunham Decl.") ¶ 5, ECF No. 22.) The "water intrusion likely happened very early on in the service life of the structure (in or around 1997) and continued until the discovery of hidden damage." (Dunham Decl. ¶ 11.) New damage began with each actual wetting and drying cycle and continued throughout the effective dates of the insurance policies at issue from 2011-2019. (Dunham Decl. ¶ 12.) The extent and nature of the damage was not discovered until March 2018. (Dunham Decl. ¶¶ 12-13.)

HNI tendered a claim to Travelers under its policies providing coverage from July 1, 2012, through July 1, 2018. (Decl. of Nicholas A. Thede ("Thede Decl.") Ex. B, ECF No. 24.) HNI also submitted a claim under the policy issued by American in effect from July 1, 2011 through July 1, 2012. (Beatty Decl. Ex. A.)

---

[1] On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005)

American denied HNI's claim on October 17, 2018. (Davies Decl. ¶ 6.) Travelers denied HNI's claim on February 19, 2019. (*Id.*) Both insurers cited the "Legal Action Against Us" clause in the policies which requires that "[t]he action be brought within 2 years after the date on which the direct physical loss or damage occurred." (*See* Thede Decl., Ex. A at 35, Beatty Decl., Ex. A at 62.)

HNI originally filed this case in Multnomah County Circuit Court, but Travelers removed the case on February 20, 2019. (ECF No. 1.) The parties agreed to resolve the issue of the suit limitation provision prior to engaging in discovery. (Thede Decl. ¶ 9.)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter*, 419 F.3d at 891. The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

### II. DISCUSSION

Defendants move for summary judgment on the ground that this action is untimely because the relevant suit limitation provisions require HNI to bring an action within two years after the date on which the loss or damage occurred. HNI responds that the two-year limitation

provision was not triggered until HNI discovered the loss or damage and therefore its suit is timely. The Court agrees.

### A. Legal Standard

"The interpretation of an insurance contract is a question of law for the court to decide." *Legin Rest., Inc. v. Truck Ins. Exch.*, No. 03-1332-MO, 2004 WL 726904, at *1 (D. Or. Apr. 5, 2005) (citing *Hoffman Constr. Co. of Alaska v. Fred S. James & Co.*, 313 Or. 464, 469 (Or. 1992)). "The primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." *Totten v. N.Y. Life Ins. Co.*, 298 Or. 765, 770 (1985) (citation omitted). When a policy does not define a term, the court must first ascertain the term's plain meaning. *Hoffman Constr.*, 313 Or. at 464. "[A] term is ambiguous . . . if two or more plausible interpretations of that term withstand scrutiny . . . after the interpretations are examined in light of . . . [the] particular context in which the term is used in the policy and the broader context of the policy as a whole." *Id.* at 470. Finally, "when two or more competing, plausible interpretations prove to be reasonable after other methods for resolving the dispute over the meaning of particular words fail, *then* the rule of interpretation against the drafter of the language becomes applicable[.]" *Id.*

Under Oregon law, "[i]t is the insurer's burden to draft exclusions and limitations that are clear." *N. Pac. Ins. Co. v. Hamilton,* 332 Or. 20, 29 (2001). The Court's role "in interpreting an insurance policy is to determine the intent of the parties as interpreted from the perspective of the ordinary purchaser of insurance." *Emp'r-Shopmens Local 516 Pension Tr. v. Travelers Cas. & Sur. Co. of Am.*, 235 Or. App. 573, 582 (2010) (quotation marks and citations omitted).

### B. *Hoffman Construction* Analysis

The parties dispute whether the term "occurred," as used in the phrase "within 2 years after the date on which the direct physical loss or damage occurred," is ambiguous. If the Court

PAGE 4 – OPINION AND ORDER

determines that the policy term is ambiguous, *Hoffman Construction* instructs the Court to determine if the competing interpretations are plausible.

1.  **Plain Meaning and Particular Context of Policy Terms**

Both insurers' policies require that an action is brought "within 2 years after the date on which the direct physical loss or damage occurred." (Thede Decl., Ex. A at 35, Beatty Decl., Ex. A at 62.) HNI argues that in a case of hidden damage, the suit limitation period does not begin to run until the damage is discovered. (Pl.'s Resp. Opp. Defs.' Mot. Summ. J. at 12-19.) Defendants argue that the suit limitation period is triggered on the date the damage begins, regardless of whether the insured is aware of the damage. (Def. Travelers Mot. for Summ. J. at 2; Def. American Mem. In Supp. of Mot. for Summ. J. at 7.) The Court finds that both interpretations are plausible in light of the plain meaning of the policy language and the context in which it appears.

HNI notes that the dictionary definition of "after" is "NEXT : later in time : SUBSEQUENT, SUCCEEDING," and the definition of "occur" includes "to present itself : to come to pass : to take place : HAPPEN" and "to be present or met with: EXIST, APPEAR." (Pl.'s Resp. Defs.' Mot. for Summ. J. at 13) (citing Webster's Third New International Dictionary). Based on these definitions, HNI argues that "the plain and ordinary meaning of these terms support an interpretation . . . that permits a policyholder to bring a lawsuit seeking coverage for property loss or damage within two years subsequent to or succeeding the period that the loss or damage is present or exists." (Pl.'s Resp. Defs.' Mot. for Summ. J. at 13.) The Court finds that it is reasonable to interpret "occurred" to mean "to present itself," to "appear," or to "exist," so that the limitations period is not triggered until after the loss or damage presents itself or appears or ceases to exist. *See Strauss v. Chubb Indem. Ins. Co.*, 771 F.3d 1026, 1035 (7th Cir. 2014) (holding that suit limitation provision requiring that claims be filed "within one

PAGE 5 – OPINION AND ORDER

year after a loss occurs" was "ambiguous as applied to a progressive loss and can entirely reasonably be interpreted to mean after a loss completes"); *see also Sunwood Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, No. C16-1012-JCC, 2017 WL 5499809, at *6 (W.D. Wash. Nov. 16, 2017) (holding that "[a] suit limitation clause that hinges on when a loss 'occurs' begins to run when hidden damage is 'concluded or exposed,' not upon termination of an insurance policy") (citation omitted); *Panorama Vill. Condo. Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wash. 2d 130, 133 (Wash. 2001) (holding that "after a loss occurs" means that "the policyholder must bring an action for coverage within one year subsequent to or succeeding the loss[,]" and that "the provision permits an insured to pursue coverage rights within one year after a loss is over rather than merely within one year after a loss begins"). In the context of hidden and progressive water damage, HNI's interpretation is reasonable because an insured may not be aware of the damage until after the limitations period expires.

Defendants argue that Oregon courts have held that the term "occurred," as used in a suit limitation provision, is unambiguous and runs at the inception of damage, relying on *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or. 235, 250 (1993). In *Moore*, the Oregon Supreme Court interpreted a policy that borrowed its language from OR. REV. STAT. § 742.240: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within 24 months next after *inception of the loss*." (Emphasis added.) Here, it is undisputed that Defendants' policies did not adopt the "inception of the loss" language of OR. REV. STAT. § 742.240, nor does the statute require that precise language. Accordingly, *Moore*, and the cases that rely on *Moore*, are not relevant here. *Cf. Strauss*, 771 F.3d at 1035 (explaining that "if the Policy employed the same language as that found in [the Wisconsin state statute], the [insureds'] claim might be time-barred").

Nevertheless, Defendants' interpretation of "occurred" to mean the date on which the damage begins is also a plausible interpretation based on the particular context of the policy term, and the interpretation arguably fits within the dictionary definition of the word "occurred" (e.g., "to take place" or to "happen"). *See Great Am. Ins. Co. v. Or. Landmark*, No. 10-3147-TC, 2011 WL 2414379, at *2 (D. Or. Apr. 6, 2011) (interpreting the same suit limitation provisions at issue here and finding that "occurred" refers to the "loss date").

Accordingly, the Court finds that the term "occurred" is ambiguous and both sides offer plausible interpretations of the term. Therefore, the Court continues to the next step of the *Hoffman Construction* analysis. *See Legin*, 2004 WL 726904, at *3 (holding that the plain meaning of "damage" is ambiguous on its face, and continuing to the next step in the *Hoffman* analysis).

### 2. Broader Context of the Policy as a Whole

When a party's interpretation of a term in isolation does not comport with the policy as a whole, that party's interpretation is not controlling. *See id.* at *3-4 (holding that when the term "damage" is examined in the broader context of the policy as a whole, the policy gives the term the narrower meaning advocated by the defendant). The court must therefore examine "the broader context of the policy as a whole" and determine whether either party's interpretation of the term at issue is reasonable. *Id.* at *2 (citation omitted).

The term "occurred" appears many times throughout both the American and Travelers policies. The policies never define the term "occurred," and the use of the term throughout the policies does not definitively support a singular interpretation. By way of just one example, both policies includes a clause that directs "[a]s soon as possible, give us a description of how, when and where the loss or damage occurred." (Beatty Decl., Ex. A at 56; Thede Decl., at 48.) On the

one hand, the policy emphasizes that timely notice is required. On the other hand, an insured cannot provide notice of damage prior to its discovery.

Based on the Court's review of the policies, the use of the term "occurred" throughout the policies does not consistently align with either HNI's or Defendants' interpretation, and therefore the broader context of the policies as a whole does not resolve the ambiguity. *See Hunters Ridge Condo. Ass'n v. Sherwood Cross, LLC*, 285 Or. App. 416, 427 (2017) (concluding that ambiguity remains where both parties' interpretations of the term at issue are plausible in light of the broader context of the policy); *see also Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or. App. 468, 483 (2010) (noting that two sections of the policy could comport with either the insured's or the insurer's interpretation of the phrase at issue, and therefore examination of the policy's broader context did not resolve the ambiguity).

### 3. Ambiguity Resolved in Favor of Insured

When an ambiguity persists after a careful examination of the policy's language, particular context, and broader context, courts must construe the policy in favor of the insured. *See Hoffman Constr.*, 313 Or. at 470-71 ("[W]hen two or more competing, plausible interpretations prove to be reasonable after all other methods for resolving the dispute over the meaning of particular words fail, *then* the rule of interpretation against the drafter of the language becomes applicable, because the ambiguity cannot be permitted to survive."); *N. Pac. Ins. Co.*, 332 Or. at 26 ("[I]f the court cannot clarify the obscurity by undertaking the analytical steps set out in *Hoffman*, then the court will construe the provisions against the drafter."); *see also Panorama Vill.*, 144 Wash. 2d at 141 ("The industry knows how to protect itself and it knows how to write exclusions and conditions. If [an insurer] intends [a term to mean something specific], it must say so.").

Having engaged in the *Hoffman Construction* analysis, the Court concludes that the term "occurred" is ambiguous and that both HNI's and Defendants' interpretations are plausible. Therefore, the Court is required to interpret the suit limitation provision in favor of coverage. *See Bighorn Logging Corp. v. Truck Ins. Exch.*, 295 Or. App. 819, 827 (2019) (finding that commercial general liability insurance policy exclusion was ambiguous and construing in favor of the insured); *Hunters Ridge*, 285 Or. App. at 427 ("Because it remains ambiguous whether a mixed-use building qualified as a 'Multi-Unit Residential Building' under the policy, we construe the phrase against [the insurer], the drafter, and in favor of coverage."); *Fred Shearer & Sons*, 237 Or. App. at 483 ("Because we are unable to resolve ambiguity based on the text and context of the policy, we therefore will interpret the provision against the insurance company and in favor of coverage.").

With respect to the burden on insurance companies to draft clear policy language, the Court shares three observations. First, any insurance company selling property insurance in Oregon should be aware that progressive water damage is a common occurrence, and should be motivated to draft clear policy language to govern coverage of such damage. Second, insurance companies have been litigating this same policy language in Oregon for over one hundred years, and Defendants were on notice regarding the ambiguity of the term "occurred" in this context. *See, e.g., Egan v. Oakland Home Ins. Co.*, 29 Or. 403, 405 (1895) (discussing the interpretation of suit limitation provisions that begin to run from "the time the fire shall have occurred" from those that begin to run from the time "the loss or damage shall have occurred" or "after the loss," and citing cases from throughout the 1800s). Third, the relevant Oregon statute (OR. REV. STAT. § 742.240) provides clear language requiring an insured to commence an action "within 24 months next after inception of the loss," but Defendants chose not to incorporate the statutory

language in their policies. For these reasons, the Court finds that the longstanding rule of interpretation against the drafter is fairly applied here. *See Hoffman Constr.*, 313 Or. at 470-71.

Accordingly, the Court finds that the two-year suit limitation provision was not triggered until HNI discovered the hidden damage in May 2017, and therefore HNI timely filed its claims in April 2018.[2]

## CONCLUSION

For the reasons stated, the Court DENIES Defendants' motions for summary judgment (ECF Nos. 15 and 17), and DENIES AS MOOT HNI's motion for certification.[3] (ECF No. 25.)

**IT IS SO ORDERED.**

DATED this 20th day of December, 2019.

*Stacie F. Beckerman*
_____
STACIE F. BECKERMAN
United States Magistrate Judge

---

[2] Whether the damage or loss occurred in each policy period is a factual dispute for another day. *See* Dunham Decl. ¶ 11 (citing the BEAR assessment which found the "water intrusion likely happened very early on in the service life of the structure (in or around 1997) and continued until the discovery of hidden damage," and that new damage began with each wetting and drying cycle and continued throughout the effective dates of the insurance policies at issue from 2011-2019); *see also Panorama Vill.*, 144 Wash. 2d at 138 (explaining that a loss occurs when its cause ends and therefore the "insured [can] pursue coverage rights within one year after a loss is over rather than merely within one year after a loss begins").

[3] At oral argument, HNI represented that it would withdraw its motion for certification of a question to the Oregon Supreme Court if this Court adopted the *Hoffman Construction* analysis discussed herein.